UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 14-40109 |
| | ) | Chapter 11 |
| AARON A. VASA | ) | |
| SSN/ITIN xxx-xx-8723 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ACCOUNTS MANAGEMENT, INC. | ) | Adv. No. 14-4008 |
| | ) | |
| Plaintiff | ) | |
| -vs- | ) | DECISION RE:  PLAINTIFF'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| AARON A. VASA | ) | |
| | ) | |
| Defendant. | ) | |

The matter before the Court is Plaintiff Accounts Management, Inc.'s motion for summary judgment.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This decision and the accompanying order and judgment constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052.  As discussed below, the Court will grant Accounts Management's motion.

I.

In its Statement of Undisputed Material Facts (adv. doc. 14), Accounts Management proffers the following as undisputed material facts:[1]

1. [Debtor] filed a [c]hapter 13 petition in bankruptcy on . . . March 19, 2014.[2]

---

[1]The Court has omitted Plaintiff's citations to the record.

[2]On Debtor's motion (doc. 50), the Court converted Debtor's case from chapter 13 to chapter 11 (doc. 60).

2. [Debtor] had previously entered into a Community Needs Physician Loan Agreement ("Loan Agreement") with Sacred Heart Health Services doing business as Avera Sacred Heart Hospital ("[Avera]") on February 20, 2011.[3]

3. The Loan Agreement provided that [Avera] would loan $60,000 to [Debtor] for the purposes of assisting him in paying for tuition, books, living expenses, and other related expenses, while completing his residency program.

4. [Avera] advanced [Debtor] $20,000 on April 13, 2011, and an additional $40,000 on July 5, 2011.

5. Under the terms of the Loan Agreement, [Debtor] agreed to either locate to Yankton and establish a full-time hospitalist practice, or to pay back the $60,000, plus interest.

6. [Debtor] also signed a [p]romissory [n]ote agreeing to repay the money advanced by [Avera], plus interest.

7. [Debtor] admits that he signed the Loan Agreement, that he did not establish a practice in Yankton, and that therefore the [p]romissory [n]ote that he signed along with the Loan Agreement is due and payable subject to his bankruptcy case.

8. [Debtor] also admitted at the first meeting of creditors that [Avera] advanced him the $60,000 and that he used the money for tuition, books, and living expenses:

   Q: Okay. And ultimately it was $60,000 that Avera advanced –

   A: Yep.

   Q: And the purpose of that loan was to assist you in paying for tuition, books, living expenses?

   A: Yep.

---

[3]The Loan Agreement is attached as Exhibit A (adv. doc. 1-1) to Accounts Management's complaint (adv. doc. 1). Pursuant to SECTION 3, ¶ C thereof, the Loan Agreement "shall be interpreted under the laws of the State of South Dakota[.]"

> Q: Is that right?
>
> A: I don't know what they assumed it was for, but it was a bonus (unintelligible).
>
> Q: Did you read the contract before you signed it?
>
> A: Scanned it.
>
> Q: Okay. Well, if the contract says it was for the purpose of assisting the physician, you, in paying for tuition, books, living expenses –
>
> A: Okay.
>
> Q: – while completing your residency –
>
> A: Sure.
>
> Q: – you wouldn't deny that?
>
> A: Okay.
>
> Q: Okay. How did you spend those funds, do you recall?
>
> A: Living expenses.
>
> Q: Some tuition, books also?
>
> A: Sure.
>
> Q: Okay. Thank you. And can we also agree that of that $60,000 that was advanced, you don't dispute that $60,000 was advanced –
>
> A: No, not at all.
>
> Q: – do you?
>
> A: I think I have actually written to him and told him about that.

9. With the exception of $750, which was applied to accrued interest,

    [Debtor] has failed to repay the outstanding obligation.

10. On May 6, 2013, Avera . . . assigned the Loan Agreement and [promissory n]ote to Accounts Management for purposes of collection.

11. Thereafter, Accounts Management sued [Debtor] in Minnehaha County Circuit Court, and [Debtor] subsequently filed this [c]hapter 13 bankruptcy proceeding.

12. [Debtor]'s total indebtedness under the [p]romissory [n]ote as of July 9, 2014[ ] is $60,000 in principal[ ] and $8,924.38 in interest, with interest continuing to accrue in the amount of $8.63 per day.

In his Statement of Facts in Dispute (adv. doc. 21), Debtor challenges two of these facts. With respect to no. 3, Debtor points out the Loan Agreement says "etc.," not "and other related expenses";[4] describes Accounts Management's characterization of the purpose of the Loan Agreement as "out of context"; and suggests several additional purposes of the Loan Agreement. With respect to no. 8, Debtor argues "he is entitled to further explanation on his answers given at the Creditor Meeting"; states he had other sources of income, *i.e.*, "traditional federal student loans" and the salary he received during his residency, to cover his educational expenses; states "[t]he loan given by [Avera] was not restricted for educational purposes and was used for family expenses and medical obligations"; and offers yet another purpose of the Loan Agreement, *i.e.*, "to be a sign on bonus and an incentive to locate into the Yankton

---

[4] In his answer (adv. doc. 10), Debtor suggests the use of "etc." means the loan could be used for anything. Debtor does not address this argument in his brief and thus appears to have abandoned it. In any event, it is without merit, for the reasons discussed in Accounts Management's brief.

community and enter into an employment agreement." Debtor does not dispute any of the remaining facts, including Accounts Management's calculation of the amount owed by Debtor.

II.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(a). An issue of material fact is *genuine* if the evidence is such that a trier of fact could find for either party. *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011). A genuine issue of fact is *material* if its resolution affects the outcome of the case. *Gazal v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 647 F.3d 833, 838 (8th Cir. 2011) (cite therein). In reviewing a motion for summary judgment, the Court considers the pleadings, the discovery and disclosure materials in the record, and any affidavits. *Wood v. SatCom Marketing, LLC*, 705 F.3d 823, 828 (8th Cir. 2013). The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Tolan v. Cotton*, ___ U.S. ___, 134 S.Ct. 1861, 1866 (2014). The nonmovant receives the benefit of all reasonable inferences supported by the evidence. *B.M. ex rel. Miller v. South Callaway R-II School Dist*., 732 F.3d 882, 886 (8th Cir. 2013).

The movant bears the burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Gibson v. American*

*Greetings Corp.*, 670 F.3d 844, 852-53 (8th Cir. 2012).  If the movant meets its burden, the nonmovant, to defeat the motion, must establish a genuine factual issue. *Residential Funding Co. v. Terrace Mortg. Co.*, 725 F.3d 910, 915 (8th Cir. 2013). The nonmovant may not rest on mere allegations or pleading denials, *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 910 (8th Cir. 2010), or "merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoted in *Residential Funding*, 725 F.3d at 915).  Instead, the nonmovant, as to those elements of a claim on which it bears the burden of proof, must substantiate its allegations with admissible, probative evidence that would permit a finding in its favor on more than speculation or conjecture.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quoted in *Spaulding v. Conopco, Inc.,* 740 F.3d 1187, 1190-91 (8th Cir. 2014)); *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997) (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

III.

By its complaint, Accounts Management seeks a judgment against Debtor for the $60,000.00 Avera loaned Debtor plus accrued interest.  In his answer, Debtor admits entering into the Loan Agreement, but denies Accounts Management's allegations regarding the amount owing thereunder.  However, as noted above, in his Statement of Facts in Dispute, Debtor no longer challenges Accounts Management's calculation of the amount he owes Accounts Management.  Consequently, Accounts

Management is entitled to a judgment against Debtor for $70,063.54.[5]

Accounts Management also seeks a determination that its judgment is nondischargeable under 11 U.S.C. § 523(a)(8)(A)(ii) or (B). Generally speaking, a discharge under 11 U.S.C. § 1141 does not discharge an individual debtor from any debt for "an obligation to repay funds received as an educational benefit, scholarship, or stipend."[6] 11 U.S.C. § 523(a)(8)(A)(ii). Pursuant to the Loan Agreement, Debtor has an obligation to repay the funds he received from Avera. Thus, the question presented is whether those funds were received as an educational benefit, scholarship, or stipend. They were.

The term "educational benefit" is not defined in § 523(a)(8)(A)(ii) or in any other provision of the bankruptcy code.

> Although the breadth of this term has been the subject of some debate, a majority of courts determine whether a loan qualifies as an "educational benefit" by focusing on *the stated purpose for the loan when it was obtained*, rather than on how the loan proceeds were actually used.

*Maas v. Northstar Education Finance, Inc.* (*In re Maas*), 497 B.R. 863, 869 (Bankr. W.D. Mich. 2013) (citations therein). "This approach seems most consistent with the language of § 523(a)(8)(A)." *Busson–Sokolik v. Milwaukee School of Eng'g* (*In re*

---

[5] This figure comprises $60,000.00 of principal, $8,924.38 of interest to July 9, 2014, and $1,139.16 of additional interest from July 9, 2014 to November 19, 2014 (132 days at $8.63 *per diem*).

[6] An exception is made in cases in which "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C. § 523(a)(8). Debtor does not suggest the exception applies in this case.

*Sokolik*), 635 F.3d 261, 266 (7th Cir. 2011).  Debtor's attempt to distinguish *Maas* factually does not persuade the Court to adopt a different approach.

In this case, the purpose of the loan from Avera is readily gleaned from the clear and unambiguous language of the Loan Agreement.  The third "WHEREAS" clause of the Loan Agreement provides, "[Avera] is offering to lend Sixty Thousand Dollars ($60,000.00) *to assist [Debtor] in completion of his residency education*[.]"  (Emphasis added.)  The preamble to SECTION 1 of the Loan Agreement similarly provides, "[Avera] shall loan to [Debtor], *for the purposes of assisting [Debtor] in paying for tuition, books, living expenses, etc., while completing his residency program*, a sum of Sixty Thousand Dollars ($60,000.00)."  (Emphasis added.)

Debtor argues the Loan Agreement had other purposes, most notably "to recruit Debtor as a physician for a community that needs physicians[.]"  The Court believes this would more aptly be characterized as Avera's *motive* for extending the loan to Debtor.  However, assuming *arguendo* Debtor is correct, the most that can then be said is the Loan Agreement had more than one purpose.  This would not be particularly surprising:  Unless the lender was a relative or an eleemosynary institution, any loan that provided an educational benefit would almost certainly have more than one purpose, even if that additional purpose was only to provide a return on the lender's investment.  The Court sees no reason to conclude any such additional purpose would

somehow trump the stated purpose of providing an educational benefit.[7]

> [T]he fact that the [lender] may also have benefitted from [Debtor]'s participation in the program [does not] invalidate the educational nature of the benefit received by [Debtor]. [Debtor] offers no precedent or logic supporting her proposition that a benefit ceases to be educational when there [is] a "significant nexus with employment."

*Chicago Patrolmen's Federal Credit Union v. Daymon* (*In re Daymon*), 490 B.R. 331, 337 (Bankr. N.D. Ill. 2013). *See also Sensient Technologies Corp. v. Baiocchi* (*In re Baiocchi*), 389 B.R. 828, 831 (Bankr. E.D. Wis. 2008) ("The fact that [a loan] serves a purpose beyond the debtor's education does not necessarily mean that the funds received by the Debtor did not constitute an 'educational benefit.'"). Debtor has offered no authority to support such a conclusion.[8]

---

[7] Debtor suggests relying on provisions of the Loan Agreement quoted above is akin to "put[ting] lipstick on a pig and call[ing] it a beauty queen[.]" It appears, however, by discounting those provisions, Debtor is the one putting lipstick on the pig.

[8] Debtor does cite the Court to *Tift Co. Hosp. Auth. v. Nies* (*In re Nies*), 334 B.R. 495 (Bankr. D. Mass. 2005), which held a loan made under a physician recruitment program was not an educational loan within the meaning of § 523(a)(8). However, as Debtor concedes, *Nies* pre-dates the 2007 amendments to the bankruptcy code that, *inter alia*, added § 523(a)(8)(A)(ii). Consequently, "*Nies*, while helpful, is not determinative of the outcome of this adversary proceeding." *Liberty Bay Credit Union v. Belforte* (*In re Belforte*), Bankr. No. 10-22742-JNF, Adv. No. 11-1008, 2012 WL 4620987, at *5 (Bankr. D. Mass. Oct. 1, 2012). Moreover, to the extent *Nies* has any bearing on this case, the Court respectfully disagrees with its conclusion, for the reasons discussed in several other pre-BAPCPA cases that reached the opposite conclusion. *See*, *e.g.*, *U.S. Dept. of Health & Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986); *Rural Kentucky Medical Scholarship Fund, Inc. v. Lipps* (*In re Lipps*), 79 B.R. 67 (Bankr. M.D. Fla. 1987); *U.S. Dept. of Health & Human Servs. v. Brown* (*In re Brown*), 59 B.R. 40 (Bankr. W.D. La. 1986); *U.S. Dept. of Health & Human Servs. v. Vretis* (*In re Vretis*), 56 B.R. 156, 157 (Bankr. M.D. Fla. 1985); *U.S. Dept. of Health & Human Servs. v. Avila* (*In re Avila*), 53 B.R. 933, 937 (Bankr. W.D.N.Y.

Two other points merit discussion, although Debtor mentioned them only in passing in his brief. First, throughout his affidavit in support of his objection to Accounts Management's motion (adv. doc. 20), Debtor repeatedly claims the loan he received from Avera was a "sign on bonus." For example, he states in his affidavit, "[Avera and I] agreed upon an employment contract that included this sign on bonus of $60,000.00" and "I was told the loan received from [Avera] was a 'sign on bonus[.]'" However, this claim is not supported by the clear and unambiguous language of the Loan Agreement, which refers to the loan as just that, and only that, a loan.

Debtor does not claim the Loan Agreement is ambiguous. His statements regarding the Loan Agreement are thus barred by the parol evidence rule.

> When a contract is plain and unambiguous, "[t]he parol evidence rule bars extrinsic evidence or prior negotiations offered to contradict or supplement a written contract" because the intent of the parties can be derived from within the four corners of the contract.

---

1985).

Debtor also cites the Court to *Resurrection Medical Center v. Lakemaker* (*In re Lakemaker*), 241 B.R. 577 (Bankr. N.D. Ill. 1999), which held a salary advance–specifically and repeatedly characterized as such in the parties' agreement–made to a debtor who had completed his education was not an educational benefit, overpayment, or loan within the meaning of § 523(a)(8). In this case, there is no suggestion that the loan made to Debtor was characterized as anything other than a loan in the Loan Agreement or that Debtor had completed his education when the parties signed the Loan Agreement. *Lakemaker* is thus completely inapposite. Moreover, as Debtor concedes, *Lakemaker* also pre-dates the 2007 amendments to the bankruptcy code and, like *Nies*, is not determinative of the outcome of this case.

-10-

*In re Nelson Living Trust*, 835 N.W.2d 874, 885 (S.D. 2013) (citations therein). Put another way, "parol or extrinsic evidence may not be admitted to vary the terms of a written instrument or to add or detract from the writing." *Roseth v. Roseth*, 829 N.W.2d 136, 142 (S.D. 2013) (citation therein) (internal quotation marks omitted). "Thus, parol evidence is resorted to where [an] ambiguity may be dispelled to show what the parties meant by what they said *but not to show that they meant something other than what they said*." *Id.* at 142-43 (citation therein) (emphasis added and internal quotation marks omitted). This is precisely what Debtor is attempting to do by referring to the loan he received from Avera as a "sign on bonus." Inasmuch as Debtor must show he will be able to put on *admissible* evidence at trial proving his allegations, *Bell*, 106 F.3d at 263, the Court cannot–and has not–considered Debtor's statements regarding the Loan Agreement in reaching its decision.

Second, in his affidavit, Debtor states "I did use the funds received from [Avera] for family needs and medical obligations. I did not consider that I spent any of such funds on actual educational purposes." Far from aiding Debtor's cause, this statement actually demonstrates why so many courts, including this one, prefer the "purpose test" described in *Maas*.

> [A "use"] test would enable students who abuse funds intended for their education to receive the benefit of a discharge, while those who use the loan proceeds as intended would "retain the burden of paying them even after a . . . discharge." The "purpose" test avoids this potential problem by refocusing the inquiry on the nature and character of the loan.

*Sokolik*, 635 F.3d at 266 (citation omitted).

IV.

There is no genuine dispute as to any material fact, and Accounts Management is entitled to judgment as a matter of law. The Court will therefore enter an order granting Accounts Management's motion for summary judgment and directing the entry of a judgment declaring Accounts Management's claim for $70,063.54 is excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(ii).[9]

Dated: November 19, 2014.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

---

[9]The Court does not reach the question of whether Accounts Management is entitled to summary judgment on its alternative claim for relief under 11 U.S.C. § 523(a)(8)(B).